CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

4/13/2026

LAURA A. AUSTIN, CLERK
BY: s/C Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 7:22-cr-00032 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CORY LEE MUSE, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Defendant Corey Lee Muse, who is now proceeding *pro se*, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 ("the petition"), claiming that his counsel rendered ineffective assistance. (Mot. to Vacate [ECF No. 71].) The Government has moved to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Mot. Dismiss [ECF No. 81].) For the reasons that follow, the court will grant the Government's motion and dismiss the petition.

## I.  BACKGROUND

On September 9, 2023, Muse pleaded guilty to two counts of the superseding indictment, which charged him with: possession of 500 grams or more of a mixture and substance containing cocaine (Count Two), and possession of a firearm by a convicted felon (Count Four). (*See* Plea Agreement [ECF No. 51].) Because Muse had three previous serious drug convictions, he stipulated in his plea agreement that he was likely subject to the Armed Career Criminal Act's enhanced penalties and face a mandatory minimum sentence of 15 years. (*Id.* at 1–2.) He and the Government also stipulated, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence between 180 and 204 months was reasonable and that the court would be bound to sentence him within that range if it accepted his plea agreement.

(*Id.* at 3.) On January 24, 2024, the court sentenced Muse to 204 months' imprisonment on both counts, with his sentences to run concurrently. (Judgment [ECF No. 64].)

On October 17, 2025,[1] Muse filed a petition under 28 U.S.C. § 2255, arguing that his counsel rendered ineffective assistance at the plea, sentencing, and post-sentencing stages. Specifically, he alleges that his counsel failed to challenge the validity of prior convictions used to classify him as an armed career criminal and career offender; failed to file a notice of appeal; and misrepresented the sentence the court could impose under the plea agreement. (Mot. to Vacate at 6–9.) Muse conceded that his petition is untimely but asks the court to deem it timely through equitable tolling because "repeated institution-wide lockdowns at FCI Bennettsville" prevented him from accessing the law library and other resources. (*Id.* at 1.)

On February 24, 2026, the Government filed a combined motion to dismiss the petition and response. (ECF No. 81.) Muse filed a response in opposition to the motion to dismiss (ECF No. 82), and the Government filed a reply brief shortly thereafter. (ECF No. 83.) Muse then filed a motion for leave to file a sur-reply brief (and attached the proposed brief) (ECF No. 84), which the court granted on March 30, 2026. (ECF No. 85.) Muse's petition is therefore ripe for disposition.[2]

---

[1] The court received Muse's letter petition on October 24, 2025, but Muse delivered it to prison officials on October 17, 2025. (*See* ECF No. 51 at 11 ("Executed on this 17 day of October, 2025.").) Under the prison mailbox rule—which "establishes that a petition is deemed filed upon delivery to prison mailroom officials[,]" *United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013)—the court considers Muse's motion filed on October 17.

[2] Muse requests a hearing in his petition, but the court the court does not believe that oral argument would aid in determining the discrete legal issue presented in the petition.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And, because Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up). Finally, a court may dismiss an action under Rule 12(b)(6) "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Sanchez v. Arlington Cnty. Sch. Bd.*, 563 F. Supp. 3d 484, 487 (E.D. Va. 2021) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

### III.    DISCUSSION

A petition for collateral relief filed under 28 U.S.C. § 2255 is subject to a one-year statute of limitations. 28 U.S.C. § 2255(f); *Whiteside v. United States*, 775 F.3d 180, 182 (4th Cir. 2014). The statute provides that the one-year period of limitation is triggered by whichever of the following occurs latest:

(1)  The date on which the judgment of conviction becomes final;

(2)  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).

Under subsection (f)(1), "[w]hen a prisoner does not file a notice of appeal, the judgment becomes final when the time for seeking such review expires." *Sites v. United States*, No. 2:19-cr-10/2:21-cv-5, 2022 WL 22761438, at *2 (N.D.W. Va. Oct. 3, 2022) (citing *Clay v. United States*, 537 U.S. 522, 525 (2003)). Because Muse did not file a notice of appeal, his conviction became final on February 7, 2024, 14 days after the judgment of conviction. Therefore, the one-year statute of limitations ran on February 7, 2025. Because he did not file his petition until October 17, 2025, it is over eight months late. Muse does not dispute the

untimeliness of his petition. Rather, he argues in his petition[3] that equitable tolling or subsection (f)(2) should apply.

"Equitable tolling of petitions for collateral review is available only when a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Whiteside*, 775 F.3d at 184 (quoting *Holland v. Florida*, 60 U.S. 631, 649 (2010)). The Fourth Circuit has held that equitable tolling is appropriate in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Specifically, the petitioner must present "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Id.*

Muse argues that he was prevented from timely filing his motion by "repeated institution-wide lockdowns at FCI Bennettsville that persisted for months and entirely suspended access to the law library, legal mail, and typewriting resources." (Mot. to Vacate at 1.) Specifically, he asserts that FCI Bennettsville was placed on repeated and extended lockdowns beginning in late 2024 and continuing into early 2025, and that the lockdowns caused inmates to be confined to their housing units and deprived them of access legal materials or other resources. (Mem. in Supp. Mot. to Vacate at 6.)

---

[3] Ordinarily, the court cannot address statute of limitations at the motion to dismiss stage because it is an affirmative defense. *Goodman*, 494 F.3d at 464 ("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."). But because Muse conceded to untimeliness in his § 2255 petition and argues for equitable tolling, "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Sanchez*, 563 F. Supp. 3d at 487 (quoting *Goodman*, 494 F.3d at 464).

In his opposition to the Government's motion to dismiss, Muse added additional—and conflicting—details to his equitable-tolling argument. In particular, he states that he was at FCI Hazelton from March 2024 to November 2024, where the repeated lockdowns occurred, before being placed into federal transit confinement until January 2025. (Br. in Opp. Mot. Dismiss at 7–8.) Muse contends that he lacked access to his legal papers while in transit confinement, and that inmates in such circumstances are generally subjected to heightened security restrictions, such that their access to law libraries is "either nonexistent or severely curtailed[.]" (*Id.* at 9, 11.) The Government argues that the court should not consider these additional facts because they were not in Muse's initial petition. (Reply Br. at 1–2.) The Government further argues that, even if the court were to consider those additional facts, Muse still fails to plausibly establish the extraordinary circumstances necessary to qualify for equitable tolling. (Mot. Dismiss at 17–19, Reply Br. at 3.) The court agrees with the Government.

At the threshold, the Government is correct that parties, even when proceeding *pro se*, "are not permitted to amend their complaints by adding allegations in an opposition brief." *Draper v. Ohai*, No. 7:23-cv-248, 2025 WL 270051, at *2 n.3 (W.D. Va. Jan. 22, 2025) (citing *Jones v. Toro*, No. 3:23-cv-514, 2023 WL 8881816, at *9 (E.D. Va. Dec. 22, 2023)). The Government is also correct that neither these additional details nor the facts provided by Muse in his initial petition sufficiently demonstrate that 28 U.S.C. § 2255(f)(2) applies[4] or that the statute of limitations under § 2255(f)(1) should be equitably tolled. First, Muse does not

---

[4] In his § 2255 motion, Muse moved "this [c]ourt to deem the motion timely pursuant to equitable tolling and/or § 2255(f)(2)[,]" but he does not explain why § 2255(f)(2) should apply. Nonetheless, the court will briefly address that argument.

adequately allege that he faced a government-created impediment that violated his constitutional rights or federal law, as required for § 2255(f)(2) to apply. Courts within this circuit have held that "failure to provide access to legal materials generally does not constitute an 'impediment' within the meaning of § 2255(f)(2)." *United States v. Cook*, No. 5:18-cr-33-5, 2022 WL 1750624, at *2 (W.D. Va. May 31, 2022); *see also Laposay v. United States*, No. 1:12-cr-146, 2016 WL 2946175, at *2 (E.D. Va. May 19, 2016) (noting that "incarceration at multiple jails with no law library or library clerk is not 'violative of [a § 2255 petitioner's] constitutional rights in any way'" (quoting *United States v. Wampler*, No. 1:04-cr-67, 2008 WL 565108, at *2))); *United States v. Sumter*, No. 3:02-cr-499, 2021 WL 3173176, at *5 (D.S.C. July 27, 2021) (holding that the petitioner provided no evidence of a governmental action in violation of the Constitution or federal laws where he pointed to COVID-19 related lockdowns as the reason for his filing delay). So too here. Other than asserting that he was subjected to repeated lockdowns (and, in further briefing, that he was in transit confinement for several months)—which restricted his access to the law library and other resources—Muse does not specifically or plausibly allege a government-created impediment that violated the Constitution or federal law and prevented him from filing his petition.

Generally, "transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances" because these are often "routine incidents and circumstances of prison life" that a prisoner must consider when preparing a habeas petition. *Allen v. Johnson*, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2009) (cleaned up). Though there are situations where transfers and lockdowns "may combine with other circumstances to constitute the

extraordinary circumstances necessary to trigger equitable tolling[,]" the petitioner must allege facts showing that he was subject to restrictions that were beyond routine. *Id.* at 728–29. Here, Muse described "repeated lockdowns" in his original facility (either FCI Bennettsville or Hazelton) over a several-month timeframe—rather than a continuous lockdown—indicating that there were periods of time where he would have had access to the law library. (*See* Mot. to Vacate at 4; Br. in Opp. Mot. Dismiss at 8.) In his opposition brief, Muse alleged that he lacked access to his legal papers while in transit confinement. Although he generally averred that prisoners have restricted or no access to law libraries and research materials, he failed to allege that he, in fact, lacked access to those resources while in transit status. (Br. in Opp. Mot. Dismiss at 9, 13.) Even if the court were to consider Muse's most detailed allegations from his opposition to the Government's motion to dismiss, he does not describe circumstances beyond routine. intermittent lockdowns and transit confinement. *See United States v. Aigbekaen*, No. JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021) ("A petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown."); *Jones v. Clarke*, No. 2:22-cv-251, 2023 WL 6155277, at *5 (E.D. Va. July 7, 2023) ("Courts have routinely declined to apply equitable tolling where the petitioner alleges ignorance of the law or lack of access to legal resources. Prisoners do not have an abstract right to a law library or legal assistance."); *Allen*, 602 F. Supp. 2d at 729 ("[Petitioner] fails to indicate when he received his documents following his transfer, how long he was without these documents, and how exactly his lack of access to these materials impacted his ability to file timely his federal habeas application.").

Additionally, Muse does not sufficiently allege that he pursued his rights diligently. According to both his original petition and opposition brief, his access to resources was restored in early 2025 (specifically, he alleges that his transfer confinement ended in January 2025). (*See* Mot. to Vacate at 4; Br. in Opp. Mot. Dismiss at 8.) But Muse did not file his § 2255 petition until October 2025. He "offers no explanation of specifically when he was no longer on lockdown" in his original facility, nor what he did in between lockdowns or after he was transferred "to pursue his rights diligently." *See Jones v. Clarke*, 2023 WL 6155277, at *6. Muse merely states in his initial petition that he "acted promptly" after he regained access to resources (Mot. to Vacate at 4) and adds in his opposition brief that he "gathered materials, conducted research, and prepared his filing without professional assistance" (Br. in Opp. Mot. Dismiss at 11). Those general allegations, however, do not account for the months in between "early 2025" and October 2025, or the other time periods in 2024 when Muse was presumably not under lockdown. *See, e.g.*, *United States v. McManus*, No. 25-2774-TDC, 2025 WL 3712273, at *2 (D. Md. Dec. 23, 2025) ("[Petitioner] has also not explained how [the lockdowns] necessitated the additional five months he took before filing the §2255 [m]otion"); *Millner v. Hamilton*, No. 7:22-cv-00020, 2024 WL 3823836, at *4 (W.D. Va. Aug. 14, 2024) ("Millner's decision to simply wait until he arrived at KMCC . . . to even 'start' working on his IAC claim . . . also shows a lack of reasonable diligence entirely within his control."); *Cook*, 2022 WL 1750624, at *3 ("Cook was in transit for a large portion of the year that he had to prepare his motion. But from December 29, 2020, through at least January 6, 2022, he was no longer in transit. Thus, even if he had no access to any legal materials the first nine months after his conviction became final, he had from December 29, 2020, through his deadline for filing—

March 2021."). Muse is therefore not entitled to equitable tolling for the same reasons. His petition will therefore be dismissed as time barred.

## IV.   CONCLUSION

For these reasons, the Government's motion to dismiss will be granted and Muse's petition will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 13th day of April, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE